## In re Anonymous Nos. 33 D.B. 84 and 34 D.B. 84

Disciplinary Board Docket nos. 33 D.B. 84 and 34 D.B. 84.

SCHWARTZMAN, *Member,* March 28, 1988 —

### HISTORY OF PROCEEDINGS

On April 9, 1984 the Office of Disciplinary Counsel filed separate petitions for discipline against [respondent 1] and [respondent 2] at 33 D.B. 84 and 34 D.B. 84. The petitions charged that certain conduct of the respondents, spelled out below, constituted a

violation of D.R. 1-102(A)(5), dealing with conduct prejudicial to the administration of justice, and of D.R. 1-102(A)(6) dealing with conduct which adversely reflects on an attorney's fitness to practice law.

Both cases were consolidated for hearing, and on June 5, 1984 disciplinary counsel presented its case before Hearing Committee [    ]. At the conclusion of disciplinary counsel's case, respondents demurred, and the hearing committee sustained the demurrer and recommended dismissal of the charges. On September 11, 1984 the disciplinary board remanded the record to the hearing committee, and ordered the committee to complete the record pursuant to the rules. The basis for the remand was that the disciplinary rules do not provide for a "demurrer." On January 23, 1985 respondents presented their defense at a continuation of the hearing before the hearing committee.

In April 1981, [A] was charged in [   ] County with felonies relative to his alleged attempt to hire a mercenary to murder his wife. In June 1981 the case was assigned to Judge [B]. Respondents, who are active in criminal defense work, were retained by [A], and they have represented him from October 1981. During a period of almost two years respondents filed a number of pretrial motions before Judge [B], including motions for the judge to recuse himself. Most of the motions were denied, and some of the denials resulted in appeal efforts by respondents to the Supreme Court and the Superior Court. The relationship between the trial judge and respondents became very embittered. The judge pressed to bring the case to trial. Respondents continued to try to defeat the prosecution at the pretrial level. These proceedings were closely followed by

the media, and they generated much newspaper coverage.

In August 1983, respondents drafted a typewritten statement over four pages in length, which attacked Judge [B] with strong language. This followed a ruling by the judge based on his determination that the alleged act of [A] involved organized crime. Respondents gave the statement to Judge [B], the prosecutor, and to certain attorneys. A newspaper reporter for the [C] obtained a copy and gave a copy to a fellow reporter for the [D]. The two newspapers published articles on August 16 and 17, 1983 about the statement. The articles quoted some of the language in the statement, including some of the harshest language appearing therein. The entire statement was not published.

The evidence is conflicting as to whether respondents gave their written statement to anybody other than the judge and some attorneys. Disciplinary counsel presented two witnesses, the [C] writer [E] and the [D] writer [F]. [F] admitted receiving the statement only from [E], though she later telephoned respondent [2] and talked to him about it. [E] testified that respondent [1] handed him the statement in the presence of respondent [2]. Respondents denied the reporter's testimony.

## FINDINGS OF FACT

(1) On April 8, 1981, [A] was charged by criminal information in [ ] County with criminal attempt (murder) and criminal solicitation for allegedly having attempted to secure the services of a mercenary to murder his estranged wife.

(2) On or about June 23, 1981, [A's] case was assigned to Judge [B].

(3) Sometime thereafter, respondent [2] and respondent [1] were retained by [A] to defend him against the criminal charges described above.

(4) Between about October 1981, and August 1983, respondents filed various pretrial motions.

(a) Most of the pretrial motions were denied by Judge [B].

(b) Some of the denials of the pretrial motions resulted, in turn, in either a notice of appeal being filed with the Superior Court, or a petition being filed in either Superior Court or the Supreme Court in an attempt by respondents to seek review of a higher court.

(5) On August 16, 1983, respondents issued to [E] a reporter for the [C], a daily newspaper of general circulation, a five-page typewritten document.

(6) Thereafter, [E] gave the document to [F], a reporter for the [D], also a daily newspaper of general circulation.

(7) The document included the following language:

(a) "The [A] case has once more been denied the justice it seeks by a despot, named [B], whose 'learned decisions' make one feel that Russia may not be such a bad place after all."

(b) "[B] has always felt that the law should be as he wants it to be and not as the legislature and appellate courts determine it to be. He does not know the difference between a hearing and a legal argument; nor between discretion and despotism. He is a law unto himself."

(c) "[B] has set himself above the law and this is not only tragic for [A], but for any accused who has the misfortune of being sent to his courtroom."

(d) "These asinine decisions cannot be justified or tolerated. . . ".

(8) As a direct result of the distribution by respondents of the aforesaid document, excerpts of the same appeared in the August 16, 1983 edition of the [C], and the August 17, 1983 edition of the [D]. More specifically:

(a) The [C] article quoted the statements, or part of the statements, contained in paragraphs 7(c) and 7(d) above.

(b) The [D] article quoted the statements, or part of the statements, contained in paragraphs 7(a) and 7(d) above.

## DISCUSSION

The hearing committee, on remand, recommended dismissal of the charges filed against both respondents in an opinion that can only be described as circuitous. The hearing committee focused on two issues which it considered critical. As it states:

"There are two issues, which may be stated as questions. First, did respondents write the statement in order to influence extra-judicially the pending case? Second, did respondents' statement constitute libel of the judge?"

They concluded that based upon the testimony and evidence, that "both questions must be answered in the negative." We disagree. There is a vast body of case law which has found such conduct as that engaged in by respondents to be prejudicial to the administration of justice per se, and requires no finding of libel, or that the attorney(s) involved attempted to influence the outcome of a specific case or proceeding.

The hearing committee erred in not finding that respondents' conduct violated Disciplinary Rules 1-102(A) (5) and 1-102(A) (6). The cornerstone of their report and recommendation is the factual find-

ing that respondents did not distribute the document in question to [E], a newspaper reporter. They made said finding despite [E's] testimony that he received the document from respondents, which testimony was clear, concise, and unchallenged on cross-examination. Futher, while respondents argued that [E] perjured himself simply because [E] does not like respondents, the only evidence of [E's] purported dislike of respondents is respondents' own self-serving assertions to that effect.

There is no basis for the hearing committee's characterization of [E's] testimony as "cryptic." [E] testified that he met respondents in the hallway outside the courtroom, at which time respondent [1] took the document out of respondent [2's] briefcase and handed it to [E]. [E's] testimony in that regard was clear, concise, and *not even challenged by respondents on cross-examination*. Respondent [2], while testifying, stated, "It was interesting to note [E's] testimony that the both of us participated in handing this document to [E] as if I were a cripple, as if I could not go into my briefcase and pull out a copy of this if he was to receive one and give it to him." Any number of simple, plausible explanations exist for why respondent [1] would take the document out of respondent [2's] briefcase, none of which require respondent [2] to be "a cripple." Whatever the actual circumstances were, they are known only to [E] and respondents. Cross-examination of [E] on that point would have revealed the reason for why the document was given to him. If, on the other hand, [E's] testimony had been perjurious, he would have been hard-pressed to explain such circumstances under effective cross-examination. Respondents conspicously chose *not* to cross-examine [E] on that point. Thus, [E's] testimony on the issue of respondents' distribution of the docu-

ment to him was clear, concise, and *unchallenged* on cross-examination.

Respondents assert that [E] had a motive to commit perjury, in that [E] assertedly dislikes them. Respondents' sole evidence of [E's] purported dislike for them is respondents' own self-serving testimony that they perceive such a dislike, which perception is supposedly based upon the various newspaper articles [E] wrote about the [A] case. According to respondents, [E's] articles made them appear "inept," "crazy" and as if they "didn't know what [they] were doing." Further, [E] has "burned [them] on every occasion" "has done everything to [them]," and caused respondents to be "made to look like fools."

There is no need to debate the contents of [E's] newspaper articles. A review of those articles not only fails to reveal any attempt on [E's] part to "burn" respondents, but there is no perceptible difference between [E's] article and those of the other reporters. Indeed, if one ignores the by-lines, [E's] articles are indistinguishable (in terms of objectivity) from the other reporters' articles.

While the newspaper articles were offered by respondents as proof of the *purported fact* of [E's] dislike for them, it is conspicuous that respondents had *no* evidence to offer to establish a *reason* or *basis* for [E's] purported dislike of them, and no such reason or basis is apparent.

Even if respondents' self-serving testimony, unsupported by any other evidence, that [E] dislikes them is accepted as true, such is not sufficient to cause [E's] clear, concise, and unchallenged testimony to be rejected as perjurious. It is preposterous (and exceedingly unfair to [E], who did not volunteer his testimony but was subpoenaed by petitioner) to assume that a well-established reporter for a

major daily newspaper would come into a hearing in which he is not a party and has no interest, and commit the crime of perjury (a felony) for no reason other than his purported dislike of respondents.

In denying that they gave the statement to [E], respondents testified that they only intended the statement for other lawyers, due to the fact that they were taking "such a beating (in the newspapers) on the case." Thus, respondents assert that the document was intended only as a defensive measure to protect their reputations with other lawyers. This assertion of a "limited distribution" was raised for the first time in the second hearing, and is markedly different from respondents' previous position. In paragraph 3 of the new matter portion of respondents' answer and new matter, respondents stated that their activities "were done pursuant to and in the course of the exercise by the respondent(s) of proper legal responsibility as an attorney, and advocate for justice and a responsible citizen, *whose duty is to heighten the awareness of the public."* (emphasis supplied) In the first hearing on this matter, respondents maintained their position that their intent was to reach the public with their statement. In arguing in favor of respondents' motion for demurrer, respondent [2] spoke of the "right" to "speak out" and the "duty" of a "citizen" to "speak out if you see something wrong, if you see a problem." Respondent [2] also spoke of their actions helping "this community" to see Judge [B] in the light in which respondents think he should be seen, and "that is as he acts as a judge in this community." At the second hearing, respondents abandoned their position that their purpose was to have the "public" or "this community" see Judge [B] in the light in which respondents thought he should be seen, and, instead, then asserted that they intended

only a "limited distribution" to other lawyers, because they had been "made to look like fools."

The evidence in this matter not only clearly proves that respondents gave the document to [E], but that their intent in doing so was to have the contents of the document made known to the public.

Even if the document had not been given directly to [E], it was certainly foreseeable that the document would find its way to a news reporter. The hearing committee stated: "Respondents would have known that the statement might well find its way to a news reporter." Even without such knowledge, respondents' conduct would still be violative of the disciplinary rules. While the fact that they *did* give the document to [E], with the intent that the contents thereof be made known to the public, certainly *aggravates* the misconduct, misconduct would have occurred even if respondent's publication of the document had been (as *now* asserted by respondents) on a limited basis. Respondents admitted distribution of the document to the judge and the prosecutor, as well as unidentified "other attorneys." The misconduct occurred upon the *distribution* of the document, no matter how limited.

## CONCLUSION AND RECOMMENDATION

Both respondents violated Disciplinary Rules 1-102(A) (5) and 1-102(A) (6). The disciplinary board of the Supreme Court of Pennsylvania has ordered that respondent [1] and respondent [2] be subjected to a private reprimand by the board, as well as to pay the assessable costs of investigating and prosecuting these proceedings.

Mr. Brown dissents and would dismiss the matter.

## ORDER

And now, March 28, 1988, upon consideration of the record forwarded to the chief justice pursuant to rule 208(d) (2) (111), Pa.R.D.E., and consideration of the court's action in no. 3 D.B. 86 (see order entered this date), prior orders of this court entered March 25, 1986, and July 15, 1986, are vacated. The recommendation of Hearing Committee [  ] is approved, and the petitions for discipline are dismissed.